*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* G. A. BURNS, Minor.

FOR PUBLICATION
November 21, 2025
10:23 AM

No. 373903
Montcalm Circuit Court
Family Division
LC No. 21-001023-NA

Before RICK, P.J., and MALDONADO and KOROBKIN, JJ.

PER CURIAM.

Respondent-mother appeals by right the trial court's order placing her minor child, GB, under a juvenile guardianship.[1] We vacate the order and remand for a guardianship hearing.

## I. FACTS

Petitioner, the Department of Health and Human Services (DHHS), initiated the instant proceedings against respondent-mother in November 2022, after her one-month-old child, KH, died in her care. Respondent-mother had a history of substance abuse that resulted in GB's removal from her care between 2021 and 2022. However, she complied with—and benefited from—her case service plan, and the case regarding GB was closed in October 2022. Nevertheless, in these proceedings, petitioner alleged that respondent-mother suffered from one drug overdose shortly before KH died and another shortly after, and that law enforcement officials found evidence of heroin usage in respondent-mother's home. However, DHHS did not establish to whom the drug paraphernalia belonged. It is possible the drug paraphernalia belonged to KH's father. A few months after KH's death, KH's father was arrested for outstanding warrants and had medication on his person that is used to treat opioid use disorder. Moreover, at the time of KH's death, respondent-mother complied with a drug screen that was negative for all illegal and unprescribed substances.

---

[1] The trial court terminated GB's father's parental rights, but he is not party to this appeal.

The trial court granted petitioner's request to remove GB from respondent-mother's care and exercised jurisdiction over GB, placing GB with respondent-mother's relatives. Respondent-mother eventually pleaded no contest to all allegations in DHHS's petition, at which time the trial court stated that petitioner would suspend any action toward termination pending the autopsy results for KH. When the autopsy was completed, the attendant report indicated that KH had no external or internal injuries, that he had an upper respiratory tract infection, and that he died a sudden, unexpected death. Accordingly, the report classified KH's cause of death as "indeterminate." Nonetheless, petitioner recommended termination on the basis of respondent-mother's alleged overdoses, the presence of drug paraphernalia in her home, and the death of KH.

The trial court found that petitioner did not have to undertake reasonable efforts to reunite GB and respondent-mother, and no case service plan was ever put in place. The trial court directed petitioner to file a petition to terminate respondent-mother's parental rights. After petitioner did so, respondent-mother, GB's lawyer-guardian ad litem, and petitioner stipulated to a change in GB's permanency planning goal from termination to guardianship.

The guardianship was not implemented for another year and a half. Petitioner concedes that the delay was caused by "multiple issues with getting the guardians licensed and fingerprinted for subsidies." During this lengthy delay, even though respondent-mother did not have a case service plan, the record indicates that she maintained her sobriety through medically assisted treatment, maintained stable employment, and voluntarily participated in substance-abuse counseling and negative drug screens. Respondent-mother also made several attempts to withdraw her plea, discontinue the court's jurisdiction, and prevent the appointment of GB's guardians. However, after a permanency planning hearing, the trial court entered an ex parte order placing GB in a juvenile guardianship. This appeal followed.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

Respondent-mother argues that she was denied the effective assistance of counsel when her attorney recommended that she stipulate to the change in permanency planning goal from termination to juvenile guardianship and failed to challenge the related finding that petitioner was not obliged to create a case service plan. We disagree.

"Although the constitutional provisions explicitly guaranteeing the right to counsel apply only in criminal proceedings, the right to due process also indirectly guarantees assistance of counsel in child protective proceedings." *In re CR*, 250 Mich App 185, 197; 646 NW2d 506 (2002), overruled in part on other grounds by *In re Sanders*, 495 Mich 394, 422 (2014). "The principles applicable to claims of ineffective assistance of counsel in the arena of criminal law also apply by analogy . . . ." *In re Martin*, 316 Mich App 73, 85; 896 NW2d 452 (2016). Thus,

> [t]o be constitutionally effective, counsel's performance must meet an objective standard of reasonableness . . . . To obtain relief for the denial of the effective assistance of counsel, the [respondent] must show that counsel's performance fell short of this objective standard of reasonableness and that, but for counsel's deficient performance, there is a reasonable probability that the outcome of the [respondent's] trial would have been different. [*In re Casto*, 344 Mich App 590, 611-612; 2 NW3d 102 (2022) (quotation marks and citation omitted).]

"The effective assistance of counsel is presumed, and a party claiming ineffective assistance bears a heavy burden of proving otherwise." *Id.* at 612. "Generally, attorneys are given broad latitude to determine trial strategy, and there is a strong presumption that counsel's performance was born from sound strategy. However, counsel's strategic decisions must be objectively reasonable." *People v Yeager*, 511 Mich 478, 488; 999 NW2d 490 (2023) (citations omitted).

"Claims of ineffective assistance of counsel are mixed questions of fact and law." *In re Lovitt*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 367124); slip op at 2. We review for clear error a trial court's factual findings, and we review questions of constitutional law de novo. *In re Casto*, 344 Mich App at 610. However, because respondent-mother did not preserve her claims of ineffective assistance of counsel by raising them before the trial court or moving this Court for an evidentiary hearing, our review is limited to mistakes apparent on the existing record. See *In re LT*, 342 Mich App 126, 133; 992 NW2d 903 (2022).

On the advice of her original appointed counsel, respondent-mother pleaded no contest to petitioner's allegations that KH became unresponsive in her care and that she had overdosed within a month of GB returning to her care. The trial court assumed jurisdiction and ordered petitioner to pursue the termination of respondent-mother's parental rights. Later, respondent-mother's *subsequent* counsel moved in the trial court to withdraw the plea and objected to the trial court's continuing exercise of jurisdiction—arguing that respondent-mother was innocent of the charges in the petition and that there was no basis for jurisdiction. The trial court appeared to agree with respondent-mother, stating that the "motion is appropriate" and that the court "was considering granting the motion." The motion was withdrawn, however, when the parties stipulated to "change the permanency plan from termination to guardianship."

Respondent-mother neglected to provide this Court with a copy of the stipulation, which impedes our review of her counsel's assistance in this regard.[2] The record reflects that respondent-mother's attorney informed her that, pursuant to the stipulation, she would be allowed supervised parenting time and family therapy sessions with GB at the discretion of his therapist. However, DHHS never actually approved parenting time, later stating that it had "consistently been the position of the Department" that there *not* be any visitation. Without a copy of the stipulation, this Court is unable to resolve any such discrepancy in the parties' understanding of their agreement.

It is clear, though, that the parties stipulated to a change in the permanency *goal* from termination to a guardianship. The parties did *not* stipulate to a guardianship, preserving respondent-mother's right to later challenge a guardianship. Additionally, the stipulation was beneficial to both parties. "[T]he appointment of a guardian is done in an effort to avoid termination of parental rights," and, unlike termination, "does not permanently separate a parent and child." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). In light of the stipulation, DHHS received relief from its obligation to pursue termination, and respondent-mother avoided termination of her parental rights—which would have impacted not only GB, but also her new

---

[2] A party may not leave it to Court of Appeals to search for the factual basis to sustain or reject its position, but must support its position with specific references to the record. MCR 7.212(C)(7). Indeed, on this record, it is not clear whether the parties ever drafted a stipulation. At one point, there was a discussion about putting its terms on the record, but that was never done.

child, born after the commencement of these proceedings. On this basis, we conclude that respondent-mother's attorney's recommendation to enter the stipulation did not fall below an objective standard of reasonableness, see *In re Casto*, 344 Mich App at 611-612, but rather was sound strategy to avoid termination of respondent-mother's parental rights while providing her a possible avenue for parenting time, see *Yeager*, 511 Mich at 488. Therefore, counsel's assistance was not ineffective.

## III. JUVENILE GUARDIANSHIP

Respondent-mother further argues that the trial court failed to comply with the relevant statutes and court rules governing juvenile guardianships. We agree and vacate the order implementing the guardianship.

### A. STANDARDS OF REVIEW

This Court reviews whether the trial court properly interpreted and applied relevant statutes de novo. *In re Gonzales/Martinez*, 310 Mich App 426, 431; 871 NW2d 868 (2015). In proceedings involving whether to establish a juvenile guardianship, the "trial court's factual findings are reviewed for clear error and its decision to appoint a guardian is reviewed for an abuse of discretion." *In re TK*, 306 Mich App at 709. A factual finding is clearly erroneous "if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re Kellogg*, 331 Mich App 249, 253; 952 NW2d 544 (2020) (quotation marks and citation omitted). "An abuse of discretion occurs if the decision falls outside the range of principled outcomes." *In re Piland*, 336 Mich App 713, 720; 972 NW2d 269 (2021) (quotation marks and citation omitted).

### B. LAW AND ANALYSIS

MCL 712A.19a governs juvenile guardianships that are addressed during permanency planning hearings, as in the instant case. Again, "the appointment of a guardian is done in an effort to avoid termination of parental rights." *In re TK*, 306 Mich App at 705. For a court to consider guardianship before termination, "one of two conditions must be met: either the DHHS must demonstrate 'under [MCL 712A.19a(8)] that initiating the termination of parental rights to the child is clearly not in the child's best interests' or the court must 'not order the agency to initiate termination' proceedings under MCL 712A.19a(8)." *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019) (alteration in original), quoting MCL 712A.19a(9).

Even if one of these two conditions is met, a court may order a guardianship only if it determines that doing so is in the child's best interests. MCL 712A.19a(9)(c); MCR 3.979(A). In deciding whether the appointment of a guardian is in the child's best interests, "the court may consider the best-interest factors from the Child Custody Act, the Adoption Code, or any other factors that may be relevant under the circumstances of a particular case." *In re COH*, 495 Mich 184, 208; 848 NW2d 107 (2014).

After a trial court finds that appointment of a juvenile guardian is in the best interests of the minor child, but before entering a guardianship order, a circuit court must direct the DHHS to investigate the proposed guardian and submit its findings to the trial court. MCR 3.979(A)(1);

MCL 712A.19a(11). Within seven days of receiving the findings, the court must enter an order appointing a juvenile guardian or schedule the matter for a hearing. MCR 3.979(B).

In this case, the trial court erred in a couple of ways. First, the trial court neglected to place its best-interest findings on the record. At the final permanency planning hearing, the trial court stated that a guardianship was "appropriate." But the court neglected to explain which factors supported a determination that the appointment of a guardian was in GB's best interests. There was no other hearing and no other findings on the record until the trial court entered its ex parte order, in which it stated simply:

> The court further finds that the appointment of a juvenile guardian is in the best interest of the child. The court has received and considered the information required by MCR 3.979(A)(1), and the proposed guardians should be appointed.

As discussed, the statutory scheme requires the court to base its guardianship decision on the child's best interests, which inherently necessitates articulating those findings. On this record, we determine that the trial court failed to do so.

Further, the trial court erred when it granted the guardianship without conducting a hearing pursuant to MCR 3.979(B). Child protective proceedings involve a parent's fundamental liberty interest in the care, custody, and management of their child, and the procedures employed in the appointment of a guardian ensure that there will not be an erroneous deprivation of these interests. *In re TK*, 306 Mich App at 707. As noted, the stipulation addressed a change in DHHS's *goal*, it did not extinguish respondent-mother's right to challenge a guardianship. And, in fact, she *did* challenge the guardianship. At the November 12, 2024 permanency planning hearing, respondent-mother's trial counsel voiced concern about the administration of the court rules, as well as the trial court's repeated finding that "returning the child would cause a substantial risk of harm to the child's life, physical health, and mental well-being." To address these points, respondent-mother's trial counsel requested to question DHHS on the record.

The trial court initially rebuffed this request and told trial counsel that any concerns about the goal of a guardianship should have been addressed when the parties first stipulated to it. Trial counsel agreed that "certain decisions should have been evaluated more than a year ago" and wanted the opportunity to finally be heard. The trial court indicated that it would conduct a separate guardianship hearing, which would have permitted respondent-mother to exercise her right to challenge the guardianship. However, the trial court *did not* conduct another hearing before it entered the ex parte guardianship order. Thus, the trial court erroneously implemented the guardianship without giving respondent-mother the opportunity to protect her fundamental interests. See *In re TK*, 306 Mich App at 707; MCR 3.979(B).

In these ways, the trial court failed to comply with its requirements under the relevant court rules and statutes. See MCR 3.979(A), (B); MCL 712A.19a. Therefore, we vacate the trial court's ex parte order implementing a guardianship for GB and remand the matter to the trial court to conduct a guardianship hearing consistent with this opinion.

Vacated and remanded. We do not retain jurisdiction.


/s/ Michelle M. Rick
/s/ Allie Greenleaf Maldonado
/s/ Daniel S. Korobkin